Christopher J. Renk (admitted *pro hac vice*)
  Chris.Renk@arnoldporter.com
Michael J. Harris (admitted *pro hac vice*)
  Michael.Harris@arnoldporter.com
**Arnold & Porter Kaye Scholer LLP**
70 W. Madison Street, Suite 4200
Chicago, IL 60602–4231
Telephone: (312) 583–2300
Facsimile: (312) 583–2360

*Attorneys for Plaintiff Nike, Inc.*
*[Additional Counsel Listed on Signature Page]*

UNITED STATES DISTRICT COURT

DISTRICT OF CALIFORNIA

| | |
|---|---|
| NIKE, INC., | Case No.  2:23–cv–09346–AB–PVC |
| Plaintiff and Counterclaim Defendant, | NIKE, INC.'S OPPOSITION TO SKECHERS U.S.A., INC.'S MOTION TO STAY PENDING INTER PARTES REVIEW |
| v. | |
| SKECHERS U.S.A., INC., | |
| Defendant and Counterclaim Plaintiff. | |

1

## TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................... 6

II.   FACTUAL BACKGROUND ........................................................ 7

III.  ARGUMENT .............................................................................. 8

    A.    Legal Principles ..................................................................... 8

        1.    *Inter Partes* Review Proceedings ................................. 8

        2.    The Totality of the Circumstances Weigh in Favor of Denying a Stay ........................................................ 10

    B.    Factor One Favors Nike Because This Litigation is Past Its Early Stage ................................................................. 11

    C.    Factor Two Favors Nike Because Issue Simplification is Speculative .......................................................................... 14

    D.    Factor Three Favors Nike Because Nike Would Be Prejudiced By a Stay ........................................................... 15

        1.    Subfactors [a] and [b]: Skechers Waited Until the Last Possible Week to File its Petitions for Review and Request a Stay ................................................ 16

        2.    Subfactor [c]: A Stay Would Unduly Prejudice Nike Because Skechers' IPR Petitions Are at the Earliest Possible Stage: Pre-Institution ...................... 18

        3.    Subfactor [d]: Nike and Skechers are Direct Competitors, Disfavoring a Stay ................................. 18

IV.   CONCLUSION ......................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Automatic Mfg. Sys., Inc. v. Primera Tech., Inc.*,
    No. 6:12-CV-1727, 2013 WL 1969247 (M.D. Fla. May 13, 2013)....................7

*Biomet Biologics, LLC v. Bio Rich Med., Inc.*,
    No. SACV 10-1582, 2011 WL 4448972 (C.D. Cal. Sept. 26, 2011)................15

*Boston Sci. Corp. v. Cordis Corp.*,
    777 F. Supp. 2d 783 (D. Del. 2011) ....................................................................7

*Cal. Inst. Tech. v. Samsung Electronics Co., Ltd.*,
    No. 2:21-CV-00446 (E.D. Tex. Jan. 20, 2023) .................................................21

*California Inst. Of Tech. v. Broadcom Ltd.*,
    25 F.4th 976 (Fed. Cir. Feb. 4, 2022) .................................................................9

*CAO Lighting, Inc. v. Feit Elec. Co.*,
    No. CV 20-04926, 2022 WL 18142504 (C.D. Cal. Dec. 5, 2022) (Birotte, J.) .16

*Caravan Canopy Int'l, Inc. v. Home Depot U.S.A., Inc.*,
    No. 19-CV-6224, 2021 WL 831028 (C.D. Cal. Feb. 25, 2021) .........................13

*Cloudofchange, LLC v. Lightspeed POS Inc.*,
    No. 6:21-CV-01102, 2023 WL 3467787 (W.D. Tex. May 15, 2023)................21

*Copy Protection LLC v. Netflix, Inc.*,
    No. 14-CV-365, 2015 WL 3799363 (D. Del. June 17, 2015) ...........................12

*DMF, Inc. v. AMP Plus, Inc.*,
    No. 2:18-CV-07090, 2019 WL 9077477 (C.D. Cal. Dec. 13, 2019) ...........15, 19

*Ellison Educ. Equip., Inc. v. Stephanie Barnard Designs, Inc.*,
    No. SA CV 18-2043, 2020 WL 2084674 (C.D. Cal. Jan. 13, 2020).................14

*Facet Techs., LLC v. Lifescan, Inc.*,
    No. 2:22-CV-01717, 2023 WL 4203506 (C.D. Cal. May 1, 2023) ...6, 17, 19, 20

*Game & Tech. Co. v. Riot Games, Inc.*,
    No. 16-CV-06486, 2016 WL 9114147 (C.D. Cal. Nov. 4, 2016).....................13

*Hologram USA, Inc. v. Vntana, 3D, LLC*,
  No. CV 14–09489, 2015 WL 12791513 (C.D. Cal. Dec. 7, 2015) .................... 20

*Inneos LLC v. Opticis Co.*,
  No. 8:23-CV-00185, 2023 WL 6787821 (C.D. Cal. Sept. 13, 2023).. 6,
  11, 18, 19

*Invensas Corp. v. Samsung Elecs. Co.*,
  No. 17-CV-1363, 2018 WL 4762957 (D. Del. Oct. 2, 2018) ............................ 12

*JBF Interlude 2009 Ltd. v. Quibi Holdings LLC*,
  No. 2:20-CV-02250, 2020 WL 6203555 (C.D. Cal. Oct. 19, 2020) ........ 6, 14, 15

*Jiaxing Super Lighting Elec. Appliance Co. v. MaxLite, Inc.*,
  No. CV 19-4047, 2020 WL 5079051 (C.D. Cal. June 17, 2020) ........... 10, 17, 18

*Kirsch Rsch. & Dev., LLC v. Epilay, Inc.*,
  No. 2:20-CV-03773, 2021 WL 4732578 (C.D. Cal. May 7, 2021),
  *reconsideration denied*, 2021 WL 4704721 (C.D. Cal. Aug. 18, 2021) ............ 19

*LakeSouth Holdings, LLC v. Ace Evert, Inc.*,
  No. 3:14-CV-1348, 2015 WL 10818619 (N.D. Tex. June 17, 2015) ............... 12

*Locata LBS, LLC v. Yellowpages.com, LLC*,
  No. LA CV13-07664, 2014 WL 8103949 (C.D. Cal. July 11, 2014) ............... 13

*MiMedx Group, Inc. v. Liventa Bioscience, Inc.*,
  No. 1:14-CV-1178, 2015 WL 13907479 (N.D. Ga. Apr. 6, 2015) ................... 10

*MiMedx Grp., Inc. v. Tissue Transplant Tech.*,
  No. SA-14-CA-719, 2015 WL 11573771 (W.D. Tex. Jan. 5, 2015) ............... 12

*Nike, Inc. v. Skechers U.S.A., Inc.*,
  No. 2:17-CV-08509 (C.D. Cal. 2021) ............................................................ 21

*Polaris Innovations Ltd. v. Kingston Tech. Co.*,
  No. SACV16-00300, 2016 WL 7496740 (C.D. Cal. Nov. 17, 2016) ...... 7, 10, 11

*Purecircle USA Inc. v. SweeGen, Inc.*,
  No. 18-CV-1679, 2019 WL 3220021 (C.D. Cal. June 3, 2019) ...................... 13

*Ravgen, Inc. v. Quest Diagnostics, Inc.*,
  No. 2:21-CV-09011, 2022 WL 2047615 (C.D. Cal. Feb. 2, 2022) .................... 8

*Rensselaer Polytechnic Inst. V. Apple Inc.*,
    No. 1:13-CV-0633, 2014 WL 201965 (N.D.N.Y. Jan. 15, 2014) ...................... 12

*Separation Design Grp. IP Holdings, LLC v. Inogen, Inc.*,
    No. LA CV15-08323, 2017 WL 11631525 (C.D. Cal. July 11, 2017) ............. 17

*SpeakWare, Inc. v. Microsoft Corp.*,
    No. SA CV 18-1293, 2019 WL 1878350 (C.D. Cal. Feb. 21, 2019) ................ 12

*SZ DJI Tech. Co. v. Yuneec Int'l Co.*,
    No. CV 16–0595, 2016 WL 9114148 (C.D. Cal. Dec. 1, 2016) ....................... 20

*TeleSign Corp. v. Twilio, Inc.*,
    No. CV 15-3240, 2016 WL 6821111 (C.D. Cal. Mar. 9, 2016) ........................ 16

*ThroughPuter, Inc. v. Microsoft Corp.*,
    No. 2:22-CV-344, 2022 WL 2498754 (W.D. Wash. 2022) ............................... 10

*Trover Grp., Inc. v. The Security Ctr., Inc.*,
    No. 2:13-CV-1047, 2015 WL 1069179 (E.D. Tex. Mar. 11, 2015)............. 10, 12

*Univ. Elec., Inc. v. Univ. Remote Control, Inc.*,
    943 F. Supp. 2d 1028 (C.D. Cal. 2013) ............................................................ 20

*Virtual Agility Inc. v. Salesforce.com, Inc.*,
    759 F.3d 1307 (Fed. Cir. 2014) ......................................................................... 19

*Wherevertv, Inc. v. Comcast Cable Communs*, LLC,
    No. 2:18-CV-529, 2019 WL 5061260 (M.D. Fla. 2019) .................................. 11

*Wonderland Switzerland AG v. Britax Child Safety, Inc.*,
    No. 19-CV-02475, 2020 WL 7075122 (D.S.C. Dec. 2, 2020)........................... 10

**Statutes**

35 U.S.C. 315(b) ....................................................................................................... 16

35 U.S.C. §§ 102 ........................................................................................................ 8

35 U.S.C. § 311(b) ...................................................................................................... 9

35 U.S.C. § 312(a)(2) .................................................................................................. 9

35 U.S.C. § 312 (a)(3) ................................................................................................. 9

35 U.S.C. § 314 ........................................................................................................... 9

- 4 -

35 U.S.C. § 314(a) ........................................................................................................9

35 U.S.C. § 315(b) ........................................................................................................9

35 U.S.C. § 315(e)(2) ....................................................................................................9

35 U.S.C. § 316(a)(11) ............................................................................................9, 14

35 U.S.C. § 316(a)(l1) ................................................................................................14

35 U.S.C. § 325(d) ........................................................................................................9

**Other Authorities**

37 C.F.R. § 42.101(b) ...................................................................................................9

37 C.F.R. § 42.104 ........................................................................................................9

37 C.F.R. § 42.104(a) ....................................................................................................9

37 C.F.R. § 42.108(a) ..................................................................................................11

37 C.F.R. § 42.108(b) ...................................................................................................9

1

## I. __INTRODUCTION__

2    Skechers' motion to stay ("Motion") should be denied. All three factors

3 considered by this district in weighing a motion to stay pending *inter partes*

4 review—(1) the stage of the litigation, (2) simplification of the issues, and (3)

5 prejudice to the non-movant—weigh against a stay.

6    The first factor, stage of the case, supports denial because this litigation is

7 long past its early stages. Fact discovery, which opened on January 25, 2024, is now

8 almost complete. Skechers filed its Motion less than two months before the close of

9 fact discovery and it noticed the Motion for five days before the close of fact

10 discovery. The parties briefed claim construction and the Court held a *Markman*

11 hearing months ago. The Patent Trial and Appeal Board (the "Board") will not

12 render institution decisions on Skechers' petitions for *inter partes* review ("IPR")

13 until June 2025, well after the close of discovery and summary judgment briefing in

14 this case. And even if the Board institutes IPR proceedings on all of Skechers'

15 petitions, which is merely speculative at this point, the trial in this case is scheduled

16 for nearly a year before the Board would issue its final decisions in those IPR

17 proceedings. *See* ECF No. 73 at 3.

18    The second factor, simplification of the issues, supports denial because none

19 of Skechers' petitions have been instituted. Skechers can only speculate as to

20 whether, and to what extent, its petitions will ultimately simplify any issues in this

21 case, if at all. If the Board denies institution, none of the issues in the litigation will

22 be narrowed, and none of the IPR estoppel provisions or stipulations provided by

23 Skechers will apply to this case. Courts of this Circuit have regularly denied stays

24 on this basis. *See Inneos LLC v. Opticis Co.*, No. 8:23-CV-00185, 2023 WL

25 6787821, at *3 (C.D. Cal. Sept. 13, 2023); *Facet Techs., LLC v. Lifescan, Inc.*, No.

26 2:22-CV-01717, 2023 WL 4203506, at *3 (C.D. Cal. May 1, 2023); *JBF Interlude

27 2009 Ltd. v. Quibi Holdings LLC*, No. 2:20-CV-02250, 2020 WL 6203555, at *7

28

(C.D. Cal. Oct. 19, 2020); *Polaris Innovations Ltd. v. Kingston Tech. Co.*, No. SACV16-00300, 2016 WL 7496740, at *2 (C.D. Cal. Nov. 17, 2016).

The third factor, undue prejudice, also supports denial. Nike and Skechers are direct competitors. District courts place significant emphasis on this consideration and are "generally reluctant to stay proceedings where the parties are direct competitors." *See Boston Sci. Corp. v. Cordis Corp.*, 777 F. Supp. 2d 783, 789 (D. Del. 2011). In light of that competition, and the fact that the Board has not yet instituted IPR proceedings, Nike should be permitted "to prosecute its claims, to take discovery, and to set its litigation positions, at least until such a time as the [Board] takes an interest in reviewing the challenged claims." *Automatic Mfg. Sys., Inc. v. Primera Tech., Inc.*, No. 6:12-CV-1727, 2013 WL 1969247, at *3 (M.D. Fla. May 13, 2013). Moreover, Skechers unjustifiably delayed in filing both its IPR petitions and its Motion. Skechers waited to file its IPR petitions until nearly a year after being served the complaint and more than six months after it served invalidity contentions in this case that included all but one of the prior art references it now raises in its IPR petitions. And Skechers also waited to file its Motion, noticing notice the Motion for just five days before the close of fact discovery in this case.

Because all three factors weigh against a stay, Nike requests that the Court deny Skechers' Motion.

## II.   <u>FACTUAL BACKGROUND</u>

Nike filed this suit against Skechers more than a year ago in November 2023. Nike alleges infringement of six patents: U.S. Patents Nos. 8,266,749; 9,060,562; 9,510,636; 9,730,484; 9,918,511; and 9,986,781. (collectively, the "Asserted Patents"). *See* ECF No. 1. Discovery opened on January 25, 2024, and the Court issued Scheduling Orders on March 28, 2024 and July 22, 2024. ECF Nos. 49, 73.

Since January 25, 2024, the parties have engaged in significant discovery. The parties served written discovery almost a year ago. *See* ECF No. 39 at 6. Nike

served initial infringement contentions more than eight months ago, and Skechers served initial invalidity contentions more than seven months ago. Declaration of M. Sebba in Support of Nike's Opposition to Skechers' Motion to Stay ("Sebba Decl.") at ¶ 6. The parties are currently in the process of completing email discovery. *Id*. at ¶ 4. Collectively, the parties have produced more than 40,000 documents. *See id*. Skechers has also subpoenaed document productions and deposition testimony from various third parties. *See id.* at ¶ 3. Nike has noticed four personal depositions of Skechers witnesses and a corporate deposition of Skechers. *See id*.

The parties filed opening claim construction briefs on May 24, 2024 and responsive briefs on June 7, 2024. ECF Nos. 55, 56, 60, 61. The Court held a *Markman* hearing on September 20, 2024. ECF No. 77. Fact discovery closes on January 15, 2025, and expert discovery closes on April 18, 2025. ECF No. 73 at 1, 2. Finally, the trial in this case is set for September 15, 2025. *Id.* at 2.

Skechers filed IPR petitions challenging the Asserted Patents between November 4 and 6, 2024. Motion at 3–4. The Board is expected to issue its institution decisions in June 2025—after the close of discovery and summary judgment briefing. If the Board institutes IPR proceedings, the Board will not issue Final Written Decisions in those IPR proceedings until June 2026, nine months after the trial date in this case.

## III. __ARGUMENT__

### A.    **Legal Principles**

#### 1.    *Inter Partes* **Review Proceedings**

Congress established the IPR proceeding to create "a more efficient and streamlined patent system" that limited "unnecessary and counterproductive litigation costs." *Ravgen, Inc. v. Quest Diagnostics, Inc.*, No. 2:21-CV-09011, 2022 WL 2047615, at *1 (C.D. Cal. Feb. 2, 2022). An IPR petitioner may challenge the patentability of a patent claim only on grounds that could be raised under 35 U.S.C.

§§ 102 (anticipation) or 103 (obviousness), and then only "on the basis of prior art consisting of patents or printed publication." 35 U.S.C. § 311(b).

As part of its "streamlined" system, the Board decides whether or not to institute proceedings roughly six months after receiving the petition. *See* 35 U.S.C. § 314. The Board "***may not*** authorize an *inter partes* review to be instituted unless the Director determines that the information presented . . . shows that there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition." *Id.* (emphasis added). The Board may decline to institute proceedings for a host of reasons, including reasons related to: (i) timing, 35 U.S.C. § 315(b) and 37 C.F.R. § 42.104; (ii) standing, 35 U.S.C. § 312(a)(2) and 37 C.F.R. § 42.104(a); (iii) real party in interest, 35 U.S.C. § 312(a)(2) and 37 C.F.R. § 42.101(b); (iv) duplicative proceedings, 35 U.S.C. § 325(d) and 37 C.F.R. § 42.108(b); (v) lack of particularity, 35 U.S.C. § 312 (a)(3); and/or (vi) failure to show a reasonable likelihood of prevailing, 35 U.S.C. § 314(a).

If instituted, the Board issues a final written decision within one year of the institution decision but may extend that date up to six months for good cause. 35 U.S.C. § 316(a)(11). Once the Board issues a final written decision, the petitioner is estopped from challenging the validity of any patent claim in an infringement action on the grounds that it either raised or reasonably could have raised during the course of that review. 35 U.S.C. § 315(e)(2). This is referred to as "IPR estoppel." Although IPR estoppel may streamline a district court litigation in some instances, the estoppel only attaches when the Board (i) institutes review and then (ii) issues a final written determination. *See id.*; *California Inst. Of Tech. v. Broadcom Ltd.*, 25 F.4th 976, 989 (Fed. Cir. Feb. 4, 2022). And even then, the scope of the IPR process necessarily limits its effect: the review is limited to patentability based on anticipation and obviousness, and then only based on prior art consisting of patents or printed publications. 35 U.S.C. § 311(b).

### 2. The Totality of the Circumstances Weigh in Favor of Denying a Stay

"The party seeking a stay bears the burden of showing that a stay is warranted." *Polaris*, 2016 WL 7496740 at *1. Skechers has not, and cannot, satisfy that burden here.

Courts typically consider three factors when determining whether a stay is appropriate: (1) the stage of the proceedings; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether a stay will prejudice (or tactically disadvantage) the nonmoving party. *Jiaxing Super Lighting Elec. Appliance Co. v. MaxLite, Inc.*, No. CV 19-4047, 2020 WL 5079051, at *1 (C.D. Cal. June 17, 2020). Courts should consider the "totality of the circumstances" in evaluating whether a stay is proper. *Id*.

A majority of district courts deny pre-institution motions to stay, like Skechers' Motion here. *See, e.g.*, *ThroughPuter, Inc. v. Microsoft Corp.*, No. 2:22-CV-344, 2022 WL 2498754, *1–2 (W.D. Wash. 2022) ("Courts routinely hold that motions to stay filed before the PTAB has instituted IPR are premature, and that granting a stay at that juncture will not simplify the issues."); *Trover Grp., Inc. v. The Security Ctr., Inc.*, No. 2:13-CV-1047, 2015 WL 1069179, at *5–6 (E.D. Tex. Mar. 11, 2015) ("[T]he majority of courts that have addressed the issue have postponed ruling on stay requests or have denied stay requests when the PTAB has not yet acted on the petition for review"); *MiMedx Group, Inc. v. Liventa Bioscience, Inc.*, No. 1:14-CV-1178, 2015 WL 13907479, at *3 (N.D. Ga. Apr. 6, 2015) ("Where a motion to stay is filed before the PTAB institutes any proceeding, Courts often withhold a ruling pending action [on] the petition by the PTAB or deny the motion without prejudice to refil[]ing in the event that the PTAB institutes a proceeding."). *See also, e.g.*, *Wonderland Switzerland AG v. Britax Child Safety, Inc.*, No. 19-CV-02475, 2020 WL 7075122, at *2–3 (D.S.C. Dec. 2, 2020) (same);

*Wherevertv, Inc. v. Comcast Cable Communs*, *LLC*, No. 2:18-CV-529, 2019 WL 5061260, at *3 (M.D. Fla. 2019) (same). The court in *Wherevertv* provided a similar rationale:

> Here, a stay would result in undue prejudice to plaintiff who should be able to litigate its case until the [Board] decides whether to institute *inter partes* review and identifies the scope of the review. The Court can then make a more informed analysis on a renewed Motion to Stay as to whether *inter partes* review will simplify the issues and streamline this case.

2019 WL 5061260, at *3.

Although, as Skechers points out, courts in this district have stayed litigations before institution of IPRs (*see* Motion, 2), this district has also adopted the majority approach on multiple occasions, denying a motion to stay because "[a]ny simplification resulting from the petitions is wholly speculative.… and this factor strongly weighs against granting a stay." *Inneos*, 2023 WL 6787821 at *3; *See also Polaris*, 2016 WL 7496740 at *2 ("Although [Defendant] has filed petitions for the review and cancellation of all six patents at issue, the [Board] may decide to proceed on only some of the challenged claims, if it decides to proceed at all. *See* 37 C.F.R. § 42.108(a). Therefore, any simplification as a result of [IPR] proceedings is inherently speculative.").

**B.     Factor One Favors Nike Because This Litigation is Past Its Early Stage**

The stage-of-litigation factor weighs against a stay because this case is at an advanced stage. Fact discovery is now more than 90% complete with only one month remaining. This Court denies stays at these advanced stages. *Polaris*, 2016 WL 7496740 at *2.

In fact, this Court denies stays in far more nascent litigations. *Inneos*, 2023 WL 6787821 at *2 ("The Court finds that, although the parties have made some

progress on discovery and other case deadlines, the case is at a relatively early stage and this factor slightly favors granting a stay."); *SpeakWare, Inc. v. Microsoft Corp.*, No. SA CV 18-1293, 2019 WL 1878350, at *2 (C.D. Cal. Feb. 21, 2019) (stay denied before complaint was answered.).

Other courts have likewise denied stays at far earlier stages of the litigation. *See, e.g.*, *Rensselaer Polytechnic Inst. V. Apple Inc.*, No. 1:13-CV-0633, 2014 WL 201965, *8–9 (N.D.N.Y. Jan. 15, 2014) (finding no "justification for halting the claim construction process, at least prior to determination of whether IPR will be granted" and no "sound basis to place this case on hold during the pendency of the IPR petition and preclude the parties from continuing to engage in pretrial discovery."); *Invensas Corp. v. Samsung Elecs. Co.*, No. 17-CV-1363, 2018 WL 4762957, at *4 (D. Del. Oct. 2, 2018); *Copy Protection LLC v. Netflix, Inc.*, No. 14-CV-365, 2015 WL 3799363, at *1 (D. Del. June 17, 2015); *Trover Grp.*, 2015 WL 1069179 at *3–4; *MiMedx Grp., Inc. v. Tissue Transplant Tech.*, No. SA-14-CA-719, 2015 WL 11573771, at *2 (W.D. Tex. Jan. 5, 2015); *LakeSouth Holdings, LLC v. Ace Evert, Inc.*, No. 3:14-CV-1348, 2015 WL 10818619, at *3 (N.D. Tex. June 17, 2015).

Skechers incorrectly argues this case is "still in the initial stages of litigation and where little or no discovery has been conducted" and that the parties "have engaged in relatively limited discovery." Motion at 6. Fact discovery closes in a month on January 15, 2025. The parties have exchanged infringement and invalidity contentions. Sebba Decl. at ¶ 6.  The parties have served and responded to 170 requests for production and 41 interrogatories. *Id*. at ¶ 3.  Nike and Skechers have produced almost 53,000 and more than 11,000 documents respectively, which includes email discovery. *Id*.

Skechers also mischaracterizes the status of email discovery. The parties have negotiated custodians and terms, and have produced emails responsive to

terms for multiple custodians. Skechers incorrectly argues that email discovery
"lagged, due in large part to Nike's repeated demands that Skechers refrain from
even reviewing for production emails that hit on Nike's search terms." Motion at 6.
Nike merely requested that Skechers not review documents that hit on search terms
Skechers itself created instead of using the search terms Nike requested. Sebba
Decl. at ¶ 4.   In reality, Skechers, not Nike, has prevented the parties from
completing ESI discovery by repeatedly broadening its search terms when Nike did
not object to its proposals, and asking that Nike not produce documents in response
to non-objectionable terms. *Id*.   In any event, the parties will complete email
discovery before  January 15, 2025, the close of fact discovery, which is just five
days after Skechers' noticed this Motion. ECF No. 87 at 1; ECF No. 73.

Skechers points to four cases relating to whether depositions have taken
place: *Caravan Canopy Int'l, Inc. v. Home Depot U.S.A., Inc.*, No. 19-CV-6224,
2021 WL 831028, at *2 (C.D. Cal. Feb. 25, 2021); *Game & Tech. Co. v. Riot
Games, Inc.*, No. 16-CV-06486, 2016 WL 9114147, at *2 (C.D. Cal. Nov. 4, 2016);
*Purecircle USA Inc. v. SweeGen, Inc.*, No. 18-CV-1679, 2019 WL 3220021, at *2
(C.D. Cal. June 3, 2019); *Locata LBS, LLC v. Yellowpages.com, LLC*, No. LA
CV13-07664, 2014 WL 8103949, at *3 (C.D. Cal. July 11, 2014). Those cases are
distinguishable at least because they were at much earlier stages than this case.
*Game & Tech.* ,  2016 WL 9114147 at *2 (no claim construction briefs were filed,
no depositions were scheduled, no trial date was set); *Purecircle*, 2019 WL
3220021 at *2  (four months prior to the close of fact discovery, claim construction
briefing was not complete); *Locata*, 2014 WL 8103949 at *3 (no trial date set, no
claim construction hearing). In any event, Nike has noticed four depositions of
Skechers' fact witnesses and a corporate deposition of Skechers, all before the close
of fact discovery on January 15, 2025. Sebba Decl. at ¶ 5. Skechers has not noticed
any depositions, but Skechers cannot rely on its own delay to obtain a stay.

For these reasons, the first factor weighs against granting a stay.

## C.    Factor Two Favors Nike Because Issue Simplification is Speculative

The simplification of issues weighs against a stay because the Board has not instituted IPR proceedings on any of Skechers' petitions, leaving any simplification of the issues as mere speculation at this point.

The Board's institution decisions on Skechers' petitions are not expected until June 2025. 35 U.S.C. § 316(a)(11). Even if the Board institutes proceedings on all of Skechers' petitions, which is speculative at this point, the Board will then have at least a year from its institution decisions to issue its final written decisions, which will then be followed by appeals to the U.S. Court of Appeals for the Federal Circuit. *See JBF Interlude*, 2020 WL 6203555 at *7 ("If the [Board] grants a request for IPR, the [Board] must issue a final determination 'not later than 1 year' after the petition is granted, but the one-year period may be extended by 6 months based on a showing of good cause. 35 U.S.C. § 316(a)(l1).")

Even a stay pending just the Board's institution decisions would delay this case more than four months after the close of fact discovery, one month after the close of expert discovery, and after the parties have briefed summary judgment – all on mere speculation that IPR proceedings may simplify issues in the case. *See* ECF No. 73;  *Ellison Educ. Equip., Inc. v. Stephanie Barnard Designs, Inc.*, No. SA CV 18-2043, 2020 WL 2084674, at *2 (C.D. Cal. Jan. 13, 2020) (emphasizing that the Board will not decide whether to institute the IPR until two months after the close of discovery and "while the IPR *might* simplify this proceeding *if* it were instituted, there is also a significant chance that the [Board] will decide not to institute IPR, and this Court will have thrown off the entire scheduling of this case for no benefit. This factor also weighs against granting a stay.") (emphasis in original). Furthermore, a stay pending IPR proceedings, based on nothing but

speculation, would delay this litigation far beyond its September 15, 2025 trial date. ECF No. 73. "Until the [Board] decides whether to grant [Skechers'] IPR petitions, the Court cannot determine whether the IPR process will occur or have any simplifying effect on this litigation." *JBF Interlude* at *7. (citing *Polaris* at *2 (finding that "stay of a patent infringement action is not warranted when based on nothing more than the fact that a petition for *inter partes* review was filed" because until the PTAB grants review "any simplification as a result of PTAB proceedings is inherently speculative."); *DiCon Fiberoptics, Inc. v. Preciseley Microtechnology Corp.*, No. 15-CV-01362, 2015 WL 12859346, at *2 (N.D. Cal. Oct. 13, 2015) (finding that "the question of whether a stay will simplify and streamline the issues depends entirely on whether the PTAB decides to grant the IPR petition").).

Skechers' attempts to compare this case to a previous lawsuit between the parties are unavailing. Motion at 10–11. That prior lawsuit concerned different patents and different accused products, and Skechers filed IPR petitions much earlier in the litigation. *Id*. Here any simplification remains speculative at this point.

Because issue simplification is speculative at best, this factor weighs against granting a stay.

### D.    Factor Three Favors Nike Because Nike Would Be Prejudiced By a Stay

This Court has held "[i]f a stay would result in prejudice or a clear tactical disadvantage to the nonmoving party, courts have generally denied the motion to stay." *Biomet Biologics, LLC v. Bio Rich Med., Inc.*, No. SACV 10-1582, 2011 WL 4448972, at *2 (C.D. Cal. Sept. 26, 2011).). When evaluating this factor, courts "consider evidence of dilatory motives or tactics, such as when a party unduly delays in seeking reexamination of a patent. Such tactics include seeking reexamination on the eve of trial or after protracted discovery." *DMF, Inc. v. AMP*

*Plus, Inc.*, No. 2:18-CV-07090, 2019 WL 9077477, at *10 (C.D. Cal. Dec. 13, 2019) (*citing Asetek Holdings, Inc. v. Cooler Master Co.*, No. 13-CV-00457, 2014 WL 1350813, at *4 (N.D. Cal. Apr. 3, 2014). "In weighing the prejudice to the non-moving party, courts consider four sub-factors: (1) the timing of the petition for review; (2) the timing of the request for the stay; (3) the status of review proceedings; and (4) the relationship of the parties." *TeleSign Corp. v. Twilio, Inc.*, No. CV 15-3240, 2016 WL 6821111, at *4 (C.D. Cal. Mar. 9, 2016).

Skechers did not enumerate these subfactors in its Motion. It likely failed to do so because each of the four subfactors favors Nike.

### 1.     Subfactors [a] and [b]: Skechers Waited Until the Last Possible Week to File its Petitions for Review and Request a Stay

The timing-of-the-petition and timing-of-the-motion subfactors demonstrate undue prejudice to Nike. Nike filed its complaint in this case on November 6, 2023, and served it the next day. ECF Nos. 1, 22. The service of Nike's complaint on November 7, 2023 triggered a one-year statutory window until November 7, 2024, for Skechers to file any IPRs challenging the patentability of the Asserted Patents. 35 U.S.C. 315(b). The statute seeks to limit the abuse of IPRs as tools for tactical litigation delay by requiring that a defendant petition for review within one year after being served with the complaint. *See id*. Yet, Skechers delayed filing its petitions until the last possible week that it was statutorily permitted to do so. ECF No. 87-2 at ¶¶2-7 (admitting that Skechers filed all six of its petitions between November 4 and 6, 2024).

Skechers' delay is prejudicial and suggests dilatory tactics. "A 'request for [review] made well after the onset of litigation followed by a subsequent request to stay may lead to an inference that the moving party is seeking an inappropriate tactical advantage." *CAO Lighting, Inc. v. Feit Elec. Co.*, No. CV 20-04926, 2022

WL 18142504, at *8 (C.D. Cal. Dec. 5, 2022) (Birotte, J.).[1] "Such a delay cuts against granting a stay because 'courts expect accused infringers to evaluate whether to file, and then to file, IPR petitions as soon as possible after learning that a patent may be asserted against them.'" *Jiaxing*, 2020 WL 5079051 at *4 (*quoting Int'l Test Sols., Inc v. Mipox Int'l Corp.*, No. 16-CV-00791, 2017 WL 1316549, at *3 (N.D. Cal. Apr. 10, 2017).).

Moreover, Skechers served Nike with its preliminary invalidity contentions on April 19, 2024. Sebba Decl. at ¶ 6. It then served supplemental invalidity contentions on May 17, 2024. *Id*. Those invalidity contentions include many of the invalidity bases Skechers now raises in its IPR petitions and all but one of the prior art references, meaning Skechers had the prior art references for its IPR petitions in April and May of 2024. Yet, Skechers waited more than six months to file its IPR petitions. In its Motion, Skechers did not provide—nor could it provide—any explanation or justification for waiting over six months to file it IPR petitions.

In fact, Skechers admits it is attempting to game the system and filed its IPR petitions at a time when it believed Nike to be stretched thin. *See* Motion at 11–12, 14 n.5. Skechers has since confirmed to Nike that it filed its petitions at a time where it believed Nike "would benefit from a stay because Nike could focus on its upcoming trial with lululemon" and "absent a stay, Nike will be doing 'triple duty' by simultaneously pursuing litigations against Skechers, New Balance, and lululemon." Sebba Decl., Ex. 1. These tactics should not be rewarded by granting

---

[1] *See also Facet Techs.*, 2023 WL 4203506 at *3 (timing of petitions suggested prejudice, "especially coupled with the fact that the close of fact discovery [was] impending."); *Jiaxing*, 2020 WL 5079051 at *4 (finding delay when accused infringer waited six months to file IPR petitions and an additional six months to file its motion for a stay); *Separation Design Grp. IP Holdings, LLC v. Inogen, Inc.*, No. LA CV15-08323, 2017 WL 11631525, at *3 (C.D. Cal. July 11, 2017) ("A practice of waiting until last minute to file IPR proceedings may increase the prejudice to a plaintiff of granting a stay.") (*citing TeleSign*, 2016 WL 6821111 at *4 ("Courts have critiqued the moving party [seeking a stay] when it waited until the last minute to file its IPR proceedings.").).

the stay that Skechers seeks.

For these reasons, subfactors [a] and [b] demonstrate undue prejudice to Nike and weigh against granting a stay.

### 2. Subfactor [c]: A Stay Would Unduly Prejudice Nike Because Skechers' IPR Petitions Are at the Earliest Possible Stage: Pre-Institution

The stage-of-review sub-factor also demonstrates undue prejudice to Nike. Skechers' IPR petitions are at their earliest stage: pre-institution. Prior to institution, no IPR proceedings exist—there is only Skechers' *request* for the Board to institute proceedings. That status will remain unchanged for the next six months until after the scheduled close of fact and expert discovery and after fully briefing summary judgment in this case. ECF No. 73. "The status of the review proceedings 'weighs against issuing a stay when the PTO has not yet decided whether to grant IPR.'" *Inneos*, 2023 WL 6787821 at *3 (*citing GoPro, Inc. v. C&A Mktg., Inc.*, 16-CV-03590, 2017 WL 2591268, at *5 (N.D. Cal. June 15, 2017)); *see also Jiaxing*, 2020 WL 5079051 at *4 ("Because defendant initiated IPR proceedings relatively recently, granting a stay pending those proceedings would create a lengthy delay."). Precluding Nike from progressing the litigation, when no IPR proceedings have even been instituted, is unduly prejudicial.

For these reasons, subfactor [c] demonstrates undue prejudice to Nike and weighs against granting a stay.

### 3. Subfactor [d]: Nike and Skechers are Direct Competitors, Disfavoring a Stay

The relationship-of-the-parties sub-factor also demonstrates undue prejudice to Nike. There is no dispute that Nike and Skechers are direct competitors in the footwear industry, and Skechers' accused products fall squarely within this market segment. ECF No. 39 at 2. A stay would allow Skechers to continue its infringing

- 18 -

activities, causing undue prejudice to Nike in the process.

Courts in this district are reluctant to stay cases between direct competitors. *See Kirsch Rsch. & Dev., LLC v. Epilay, Inc.*, No. 2:20-CV-03773, 2021 WL 4732578, at *3 (C.D. Cal. May 7, 2021), *reconsideration denied*, 2021 WL 4704721 (C.D. Cal. Aug. 18, 2021) ("When the parties are business competitors, however, and the plaintiff may lose customers if the case does not proceed, this may result in prejudice." (citing cases).); *Facet Techs.*, 2023 WL 4203506 at *3 (*citing Verinata Health, Inc. v. Ariosa Diagnostics, Inc.,* No. C 12-05501-SI, 2014 WL 121640, at *3 (N.D. Cal. Jan. 13, 2014) (*quoting Boston Sci. Corp. v. Cordis Corp.*, 777 F. Supp.2d 783, 789 (D. Del. 2011) ("Courts are generally reluctant to stay proceedings where the parties are direct competitors.").).[2] The Federal Circuit itself has recognized that "competition between parties can weigh in favor of finding undue prejudice" would result from a stay. *Virtual Agility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1318 (Fed. Cir. 2014).

Skechers would have the Court believe that its inquiry should begin and end with the fact that Nike does not seek lost profits damages or move for a preliminary injunction. Motion at 13–14. Not so—neither are dispositive. Skechers mischaracterizes the facts and relevant authority. "Courts have found that 'infringement among competitors can cause harm in the marketplace that is not compensable by readily calculable money damages.'" *Univ. Elec., Inc. v. Univ. Remote Control, Inc.*, 943 F. Supp. 2d 1028, 1033-34 (C.D. Cal. 2013) (*citing*

---

[2] *See also Inneos*, 2023 WL 6787821 at *3 ("When parties are competitors, courts are generally reluctant to grant a stay.") (*citing Verinata Health*, 2014 WL 121640 at *3); *DMF*, 2019 WL 9077477 ("Several courts have held that '[t]he parties' status as direct competitors also weighs against a stay because it increases the likelihood of undue prejudice.'") (*citing Interwoven, Inc. v. Vertical Computer Sys., Inc.*, No. C 10–04645, 2012 WL 761692, at *3 (N.D. Cal. Mar. 8, 2012); *Otto Bock Healthcare LP v. Ossur hf*, No. 8:13-cv-00891, 2013 WL 12313020, at *3 (C.D. Cal. Dec. 16, 2013) ("prejudice to the patentee is heightened when parties to litigation are direct competitors; in such cases, *courts presume that a stay will prejudice the non-movant*.") (emphasis in original citation).).

NIKE, INC.'S OPPOSITION TO SKECHERS U.S.A., INC.'S MOTION TO STAY PENDING IPR

*Avago Techs. Fiber IP (Singapore) Pte. Ltd. v. IPtronics Inc.*, No. 10–CV–02863, 2011 WL 3267768, at *5 (N.D. Cal. July 28, 2011) *(citing Acumed LLC v. Stryker Corp.*, 551 F.3d 1323, 1327–28 (Fed.Cir.2008).).)*. Indeed, courts in this district have found that the lack of a motion for a preliminary injunction or only seeking damages in the form of a reasonable royalty is not a basis for granting a stay. *E.g.*, *Hologram USA, Inc. v. Vntana, 3D, LLC*, No. CV 14–09489, 2015 WL 12791513, at *3 (C.D. Cal. Dec. 7, 2015) ("But the fact that Plaintiffs did not seek a preliminary injunction does not mean that they would not suffer prejudicial harm from their competitor's market activity during a lengthy delay in the case. Also, Plaintiffs may have had other reasons for deciding not to pursue injunctive relief at this stage. On Defendants' motion to stay, the Court will not hold against Plaintiffs their decision to spare the parties more litigation in the form of a motion for preliminary injunction.") (citations omitted).[3] Thus, Skechers cannot use Nike's decision to not pursue a preliminary injunction or to only seek damages in the form of a reasonable royalty as purported "proof" that Nike will not be prejudiced by a stay.

Additionally, Skechers argues that, because some of the accused products were on sale as of July 2018, Nike "delayed in bringing this action" and will not be prejudiced by a stay. Motion at 14. Skechers omits several pertinent facts. Nike and Skechers settled a separate matter (*Nike, Inc. v. Skechers U.S.A., Inc.*, No. 2:17-CV-

---

[3] *See also Facet Techs.*, 2023 WL 4203506 at *3 (lack of motion for preliminary injunction did not factor into court's determination that patentee would be prejudiced by stay); *SZ DJI Tech. Co. v. Yuneec Int'l Co.*, No. CV 16–0595, 2016 WL 9114148, at *3 (C.D. Cal. Dec. 1, 2016) (Plaintiffs' lack of pursuing a preliminary injunction "does not mean that Plaintiffs would not suffer prejudicial harm from their competitor's market activity during a lengthy delay in the case.") (citation omitted); *Univ. Elec.*, 943 F. Supp. 2d at 1034 ("[O]n a 'motion to stay, the Court will not hold against [the patentee] its decision to spare the parties more litigation [in the form of a motion for preliminary injunction].' … The fact that Plaintiff did not seek a preliminary injunction does not mean that it would not suffer prejudicial harm from its competitor's market activity during a lengthy delay in the case.") (citing *Avago*, 2011 WL 3267768 at *6).).

08509 (C.D. Cal. 2021)) on November 30, 2021. Sebba Decl. at ¶ 2. Nike's less than two-year gap between the end of that litigation and the filing of the instant action is a reasonable period of time to investigate and confirm that Skechers was indeed still marketing its infringing shoes. *Cf. Cloudofchange, LLC v. Lightspeed POS Inc.*, No. 6:21-CV-01102, 2023 WL 3467787, at *2–4 (W.D. Tex. May 15, 2023) (denying stay where Patent Owner allegedly waited two years to file suit, and waited five years from issuance of patent); *Cal. Inst. Tech. v. Samsung Electronics Co., Ltd.*, No. 2:21-CV-00446, at *3 (E.D. Tex. Jan. 20, 2023) (denying stay against accused infringer's argument that Patent Owner could have sued five-and-a-half years earlier).

For these reasons, Nike will suffer prejudice from a stay, and subfactor [d] weighs against granting a stay in this case.

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, Nike respectfully requests that the Court deny Skechers' motion to stay this action.


Dated: December 13, 2024          ARNOLD & PORTER KAYE SCHOLER LLP


By: /s/ *Michael J. Sebba*
Christopher J. Renk (admitted *pro hac vice*)
Michael J. Harris (admitted *pro hac vice*)
Arnold & Porter Kaye Scholer LLP
70 W. Madison Street, Suite 4200
Chicago, IL 60602
Telephone: (312) 583-2300
Email: chris.renk@arnoldporter.com
michael.harris@arnoldporter.com

Michael J. Sebba (SBN 345439)
Arnold & Porter Kaye Scholer LLP
777 S. Figueroa Street, 44th Floor
Los Angeles, CA 90017
Telephone: (213) 243-4000
Email: Michael.Sebba@arnoldporter.com

Bridgette C. Gershoni (SBN 313806)
Michael J. Gershoni (SBN 311192)
Lindsey C. Staubach (admitted *pro hac vice*)
Joseph M. Galvin (admitted *pro hac vice*)
Miranda Hallett (admitted *pro hac vice*)
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave., NW
Washington, D.C. 20001
Telephone: (202) 942-5000
Email: bridgette.gershoni@arnoldporter.com
michael.gershoni@arnoldporter.com
lindsey.staubach@arnoldporter.com
joe.galvin@arnoldporter.com
miranda.hallett@arnoldporter.com

Hilda Obeng (admitted *pro hac vice*)
Hilda.Obeng@arnoldporter.com
Arnold & Porter Kaye Scholer LLP
250 West 55th Street
New York, NY 10019–9710
Telephone: (212) 836–7883
Email: hilda.obeng@arnoldporter.com

*Attorneys for Plaintiff Nike, Inc.*

NIKE, INC.'S OPPOSITION TO SKECHERS U.S.A., INC.'S MOTION TO STAY PENDING IPR

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF SERVICE

I hereby certify that on December 13, 2024, I electronically transmitted the foregoing document using the CM/ECF system for filing, which will transmit the document electronically to all registered participants as identified on the Notice of Electronic filing, and paper copies have been served on those indicated as non–registered participants.

*/s/ Timothy Haugh*
For Plaintiff Nike, Inc.

## CERTIFICATE OF COMPLIANCE

Pursuant to the Standing Order (ECF No. 18), Judge Birotte's Individual Practices, and L. R. 11-6.1, the undersigned counsel of record for Nike, Inc. ("Nike"), certifies that Nike Inc.'s Opposition To Skechers U.S.A., Inc.'s Motion To Stay Pending Inter Partes Review complies with the word limit of L. R. 11-6.1, excluding the caption, table of contents, table of authorities, and the signature block.

_/s/ Michael J. Sebba_
For Plaintiff Nike, Inc.

NIKE, INC.'S OPPOSITION TO SKECHERS U.S.A., INC.'S MOTION TO STAY PENDING IPR